In re Lionel Jack **GERARD** and Martha Jean Gerard d/b/a-a/k/a Farmers' Daughters Restaurant, Debtors.

**BENEFICIAL CONSUMER DISCOUNT CO.**, Movant,

v.

Lionel Jack **GERARD** and Martha Jean Gerard d/b/a-a/k/a Farmers' Daughters Restaurant and K. Lawrence Kemp, Esq., Trustee, Respondents.

Bankruptcy No. 86–2107 PGH.
Motion No. 86–5419M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 26, 1987.

**506**

K. Lawrence Kemp, New Kensington, Pa., trustee.

Jon M. Lewis, Greensburg, Pa., for movant.

Phillip G. Collins, Greensburg, Pa., for debtors.

Albert H. Slater, Ligonier, Pa., for Steitzs.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

The issue in this case is whether a recorded mortgage on real estate, which has a mobile home affixed thereto, gives the mortgage holder a lien on the mobile home superior to a subsequent lien which is perfected in accordance with the Mobile Home Titling Act by endorsement of the lien on the certificate of title by Penndot.

### Facts

On July 2, 1984, John R. Steitz and Susan B. Steitz (collectively the "Steitzs") conveyed by deed of general warranty to Lionel Jack Gerard, one of the debtors, a parcel of real property situated in Westmoreland County, Pennsylvania, together with cer-

tain improvements described in the deed as "HAVING ERECTED THEREON a one-story restaurant building and mobile home." The certificate of title issued by the Pennsylvania Department of Transportation ("Penndot") covering the mobile home was also transferred to "Jack Gerard." As part of the transaction, Lionel Jack Gerard delivered to the Steitzs his note of even date in the amount of $92,391.90 and an accompanying purchase money mortgage with the mortgaged property described as set forth in the aforementioned deed. However, the new certificate of title covering the mobile home was issued by Penndot in the name of "Jack Gerard," without any notation thereon showing a lien in favor of the Steitzs.

On January 9, 1986, the debtors entered into a certain loan agreement with Beneficial Consumer Discount Company ("Beneficial") pursuant to which the debtors borrowed $10,961.78. As part of the loan transaction, "Jack Gerard" gave Beneficial a security interest in the same mobile home that was described in the deed and mortgage between the Steitzs and Lionel Jack Gerard (the "Mobile Home"). Beneficial's lien was (and remains) endorsed by the Pennsylvania Department of Transportation on the certificate of title for the Mobile Home.

The debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code on August 19, 1986. Thereafter, the trustee filed a motion to sell property of the estate, including the Mobile Home. On November 3, 1986, Beneficial filed a motion to terminate the automatic stay and/or for adequate protection ("Motion") to recover and foreclose on the Mobile Home in satisfaction of its claim against the debtors. The Steitzs intervened in the Motion, alleging that their prior mortgage lien on the Mobile Home was superior to Beneficial's alleged security interest. We held a hearing on November 17, 1986.

For the reasons discussed below,[1] we hold that Beneficial has a valid and perfect-

---

1. This Opinion constitutes this court's findings of fact and conclusions of law as required by

ed security interest in the Mobile Home pursuant to the Pennsylvania Mobile Home Titling Act, 68 Pa. C.S.A. § 1001 et. seq. (Purdon Supp.1986) (the "Act") and is entitled to relief from the automatic stay under Bankruptcy Code § 362(d)(2).

### Discussion

Beneficial argues that the Mobile Home is a "mobile home" as that term is defined by § 1003 of the Act. Under the Act, a lienholder can perfect a lien on a mobile home only by having its lien noted on the certificate of title, as Beneficial did. The Steitzs lien is not noted on the Mobile Home certificate of title. Therefore, Beneficial concludes, the Steitzs' prior lien on the Mobile Home is unperfected and subordinate to Beneficial's perfected lien.

The Steitzs argue that the Mobile Home is not a "mobile home" as that term is defined by the Act. Section 1003 of the Act defines a "mobile home" as follows:

A transportable structure which is built on a permanent chassis and designed to be used as a dwelling for permanent occupancy, office or place of assembly, with or without permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein.

At the November 17, 1986 hearing, the Steitzs offered the testimony of Dean Watts, a professional vehicle body repairperson and former owner-occupant of the Mobile Home. In a deposition taken on November 12, 1986, Mr. Watts testified that the Mobile Home was so dilapidated that it would be destroyed if moved, was affixed to the land at the time he sold it to the Steitzs in 1980, and remains in the same condition at present. Based on this testimony, the Steitzs argue that the Mobile Home is not transportable and thus does not fall within the Act's definition of a "mobile home." Therefore, the Steitzs conclude, the Act's lien perfection requirements do not govern the outcome of the instant dispute.

The dispositive question in this dispute, however, is not whether the subject Mobile Home falls within the Act's definition of a "mobile home." Penndot has already determined that the Mobile Home is a "mobile home" for purposes of the Act; otherwise, Penndot would not have issued a certificate of title for the Mobile Home. The Steitzs dealt with the Mobile Home as personal property by assigning the certificate of title to "Jack Gerard" and enabling him to obtain a new certificate of title in his own name. At all relevant times, the Mobile Home has been covered by a Penndot certificate of title. Therefore, it must be assumed that the Mobile Home is a "mobile home" for purposes of the Act, and that the Act's lien perfection rules apply, unless some provision in the Act makes the Act's lien perfection rules inapplicable.

■ The dispositive question in this matter is whether the Act's lien perfection rules continue to govern the perfection of a lien on a mobile home where, subsequent to Penndot's issuance of a certificate of title, the mobile home has become so dilapidated or so affixed to real property that it is no longer transportable. This characterization of the issue correctly assumes that the Mobile Home is a "mobile home" for purposes of the Act and focuses on the separate question of whether the Act's lien perfection rules are supplanted by the lien perfection rules applicable to real property solely because the Mobile Home has become immobile or affixed to real property.

The Steitzs essentially argue that when a "mobile home" becomes nontransportable or affixed to real property, the Act's lien perfection rules are automatically supplanted by the lien perfection rules applicable to real property. We find no support in the Act for the Steitzs' position and in fact find support for the opposite conclusion in § 1010 of the Act.

Section 1010 of the Act addresses the need for and consequences of cancelling a mobile home certificate of title when the

Bankruptcy Rule 7052 as made applicable to this contested matter by Bankruptcy Rule 9014.

mobile home has become affixed to real property:

> The rules and regulations adopted and promulgated pursuant to section 8 shall contain a provision that the department *may* cancel a certificate of title or ownership for a mobile home which is affixed to real property upon the filing of forms prescribed and furnished by the department. When so cancelled, interest in the ownership of the mobile home, together with all liens and encumbrances thereon, shall be transferred to and shall encumber the real property to which the mobile home has become affixed (footnote omitted) (emphasis added).

Upon fixation of the mobile home to real property, § 1010 provides that Penndot *may* cancel the mobile home's certificate of title. By negative implication, Penndot may not (read need not) cancel a mobile home's certificate of title solely because that mobile home has become affixed to real property. It is apparent, then, that affixing a mobile home to real property or otherwise rendering the mobile home immobile does not automatically cancel the mobile home's certificate of title. Until the mobile home's certificate of title is surrendered to Penndot and formally cancelled, the Act and its lien perfection rules provide the exclusive method for perfecting a lien on the mobile home. We therefore hold that where a mobile home is covered by a current Penndot certificate of title, the Act prescribes the exclusive method for perfecting a lien on that mobile home, regardless of whether the mobile home has subsequently become immobile or affixed to real property.

▆ Section 401.5(b) of the Mobile Home Titling Regulations, 67 Pa.Code (1985) provides additional support for our holding that the existence of a current certificate of title determines whether the Act's lien perfection rules apply. That section, which addresses the situation wherein a "mobile home" has become affixed to real property, provides that:

> if there is an outstanding lien, the certificate of title or ownership shall not be cancelled until the applicant submits satisfactory evidence that the lien has been recorded against the land on which the mobile home is located.

The obvious intent behind § 401.5(b) is to preserve the lienholder's perfected status, achieved by complying with the Act, against intervening liens while the lien is being transferred from the mobile home to the affixed real property. The fundamental assumption underlying § 401.5(b) is that when a mobile home certificate of title is cancelled, the lien perfection rules for real property supplant the Act's lien perfection rules with the result that the lienholder's lien becomes unperfected under the Act as of the moment Penndot cancels the certificate of title. This conclusion must be true; otherwise, there would be no reason for Penndot to delay cancellation of the certificate of title until the lien is recorded with the recorder of deeds. Therefore, it must be concluded that cancellation of a certificate of title for a mobile home that has become immobile or affixed to real property poses a risk to the perfected status of the lienholder's lien. Section 401.5(b) protects the lienholder's lien by providing that the certificate of title shall not be cancelled, thereby un-perfecting the lienholder's lien, until the lien perfection is preserved under the superseding lien perfection rules applicable to real property. Thus, § 401.5(b) is further support for the proposition that where a mobile home has become immobile or affixed to real property, the Act's lien perfection rules are supplanted by the lien perfection rules for real property upon cancellation of the certificate of title, not upon affixation of the mobile home to real property.

▆ In the instant case, ownership of the Mobile Home at all relevant times, was evidenced by a current certificate of title. Therefore, perfection of a lien on the Mobile Home was, and is, governed exclusively by the Act, not real property law, even if the Mobile Home became a fixture or otherwise non-transportable. Since the Steitzs did not have their lien noted on the Mobile Home certificate of title, they did not acquire a perfected lien on the Mobile Home.

Beneficial, on the other hand, complied with the Act's requirements by having its lien noted on the certificate of title. Beneficial, therefore, perfected its lien on the Mobile Home.

The debt due Beneficial on the loan secured by the Mobile Home is approximately $6,364.03 plus interest and late charges from September 15, 1986. The value of the Mobile Home is approximately $2,500. Since there is no equity in the Mobile Home, either for the debtor or the debtor's estate, and since the Mobile Home is not necessary to an effective reorganization, we will grant Beneficial relief from the automatic stay to recover the Mobile Home and exercise its foreclosure rights under state law. *See* § 362(d)(2).